UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

S.Y.,

      Plaintiff,

v.                        Case No: 2:20-cv-627-JES-MRM

MARRIOTT INTERNATIONAL,
INC., RESIDENCE INN BY
MARRIOTT, LLC, CSM RI NAPLES
LLC, and CSM CORPORATION,

      Defendants.

---

### OPINION and ORDER

This matter comes before the Court on review of the following two motions to dismiss: (1) defendants CSM RI Naples LLC and CSM Corporation's Motion to Dismiss (Doc. #19) and (2) defendants Marriott International, Inc. and Residence Inn by Marriott LLC's Motion To Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. #20), both of which were filed on September 25, 2020. Plaintiff filed Memorandums of Law in Opposition to each motion (Docs. ##33, 34) on October 23, 2020. Defendants each filed a Reply (Docs. ##43, 45) on November 13, 2020. For the reasons set forth below, the motions are denied.

### I.

The origins of this case began on October 30, 2019, when Plaintiff and another alleged victim of sex trafficking filed a case in the Circuit Court of the Twentieth Judicial Circuit in and

for Collier County, Florida. See S.Y. et al v. Naples Hotel Co.et al, Case No. 2:20-cv-118 (Doc. #1, p. 3). On December 31, 2019, the Plaintiffs filed a First Amended Complaint which asserted ten claims against over forty defendants. Id. at (Doc. #1, pp. 2-4). The case was removed to federal court in February 2020. Id. at (Doc. #1). On April 15, 2020, the Plaintiffs filed a Second Amended Complaint. Id. at (Doc. #85). On August 5, 2020, the undersigned denied various motions to dismiss, but determined severance of the parties was appropriate. S.Y. v. Naples Hotel Co., 476 F. Supp. 3d 1251, 1258-59 (M.D. Fla. 2020). Following the Court's severance order, plaintiff and the other alleged victim filed nearly thirty new actions against various defendants, including this case.

The Complaint (Doc. #1) in this case was filed on August 19, 2020, alleging that plaintiff S.Y. was a resident of Collier County, Florida, and was a victim of continuous sex trafficking at a certain Residence Inn by Marriott Hotel in Naples, Florida (the Residence Inn) between 2014 and February 2016. (Id. at ¶¶ 13-14, 22-24.) The Complaint further alleges that during this time period defendants Marriott International Inc. (Marriott), Residence Inn by Marriott, LLC (Residence Inn, LLC), CSM RI Naples LLC (CSM RI) and CSM Corporation (CSM Corp., or collectively Marriott Hotel Defendants) are hotel owners, operators, managers, supervisors, controllers, and/or entities responsible for hotels

at which sex trafficking has taken place, including the Residence Inn.[1] (Id. at ¶ 2.)

The Complaint sets forth the following six claims: violation of the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), 18 U.S.C. § 1595 (Count I); violation of the Florida RICO statute, § 772.104, Florida Statutes (Count II); premise liability (Count III); negligent hiring, supervision, and retention (Count IV); negligent rescue (Count V); and aiding and abetting, harboring, confining, coercion, and criminal enterprise (Count VI). (Id., pp. 34-52.) Counts I through IV are asserted against all the Marriott Hotel Defendants, while Counts V through VI are asserted against only CSM RI and CSM Corp. (Id.)

## II.

The motions to dismiss raise numerous arguments as to why the Complaint as whole, and each individual claim, should be dismissed.

---

[1] The Complaint alleges that defendants Marriott, Residence Inn, LLC, CSM RI, and CSM Corp. were collectively doing business as Residence Inn in Naples, Florida, and upon information and belief, were authorized to do, licensed to do, and were doing business in the State of Florida. (Doc. #1, ¶ 30.) In addition, it is alleged that defendants Marriott, Residence Inn, LLC, CSM RI, and CSM Corp. were, by and through their agents, servants, franchisees and/or employees, the owners, operators, managers, supervisors, controllers, and innkeepers of the Residence Inn in Naples, Florida. (Id. at ¶ 31.) Finally, The Complaint alleges that Marriott and Residence Inn, LLC are the franchisors of the Residence Inn brand (Doc. #1, ¶¶ 27, 43-56). At this stage of the proceedings, factual disputes are resolved in favor of the allegations in the Complaint.

(Doc. #19, pp. 4-14; Doc. #20, pp. 7-31.) The Court will address each of these arguments in turn.

## A. Shotgun Pleading

Each Defendant argues in its motions, that the Complaint constitutes a shotgun pleading based upon plaintiff grouping the Defendants together as the "Marriott Residence Inn Hotel Defendants" (Doc. #1, p. 1 introductory paragraph) and should be dismissed.[2] (Doc. #19, pp. 4-6; Doc. #20, pp. 13-14.)

One way in which a complaint may constitute an impermissible shotgun pleading is if it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015); see also Barmapov v. Amuial, 986 F.3d 1321, 1325 (11th Cir. 2021). Such a pleading fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," Weiland, 792 F.3d at 1323, and violates the requirement that a plaintiff provide "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2).

---

[2] The page numbers refer to those generated by the Court's computer system upon filing (upper left-hand corner) and do not always correspond with the page number at the bottom of the document.

The Complaint does in fact repeatedly references the defendants collectively as the "Marriott Hotel Defendants." The failure to specify a particular defendant is not fatal, however, when "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." Auto. Alignment & Body Serv. v. State Farm Mut. Auto. Ins. Co., 953 F.3d 707, 733 (11th Cir. 2020)(quoting Kyle K. v. Chapman, 208 F.3d 940, 944 (11th Cir. 2000)). The Complaint typically (but not always) alleges that "each and every" such defendant was involved in the activity described in the particular paragraph of the Complaint. See (Doc. #1, ¶¶ 4-5, 8-18, 57-64, 67-85, 87-88, 98-99, 103-10, 128-45, 147, 149-52, 157-60, 162, 168-79, 185-200, 205-17.) A fair reading of the Complaint is that each of these defendants was involved in the identified conduct attributed to the "Marriott Hotel Defendants." See Sprint Sols., Inc. v. Fils-Amie, 44 F. Supp. 3d 1224, 1226-27 (S.D. Fla. 2014)(finding that reference to "defendants" in a complaint was not fatal where pleading alleged that each of the two defendants perpetrated the wrongs, often acting together). While defendants may disagree that such allegations are accurate, that dispute is for another day. The group allegations do not fail to state a claim, Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co., 953 F.3d 707, 732–33 (11th Cir. 2020), and the Complaint does not constitute a shotgun pleading.

## B. Failure To State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzaín, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible. Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

### 1. Trafficking Victims Protection Reauthorization Act

Defendants Marriott and Residence Inn, LLC challenge Count I of the Complaint, alleging that the Marriott Hotel Defendants violated the TVPRA, 18 U.S.C. § 1595. (Doc. #20, pp. 15-27.) The TVPRA provides a civil remedy to victims of certain types of human trafficking. The civil remedy portion of the Act provides:

> (a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). The phrase "a violation of this chapter" refers to Chapter 77 of Title 18 of the United States Code. The only violation of Chapter 77 relevant to this case is contained in 18 U.S.C. § 1591(a), which provides in relevant part:

> (a) Whoever knowingly –
>
>   (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides,

> obtains, advertises, maintains, patronizes, or
> solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of
> value, from participation in a venture which has
> engaged in an act described in violation of paragraph
> (1),
>
> knowing, or except where the act constituting the
> violation of paragraph (1) is advertising, in reckless
> disregard of the fact, that means of force, threats of
> force, fraud, coercion described in subsection (e)(2),
> or any combination of such means will be used to cause
> the person to engage in a commercial sex act, or that
> the person has not attained the age of 18 years and will
> be caused to engage in a commercial sex act, shall be
> punished as provided in subsection (b).

18 U.S.C. § 1591(a). To state a section 1595(a) claim in this case, plaintiff must plausibly allege that she was a victim of a criminal offense under section 1591(a), and then must plausibly allege that Defendant (1)"knowingly benefit[ted] financially or by receiving anything of value," (2) from participation in a venture, (3) which Defendant "knew or should have known has engaged in" sex trafficking under section 1591(a). S.Y., 476 F. Supp. 3d at 1255-56 (citing A.B. v. Marriott Int'l, Inc., 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020)).

Marriott and Residence Inn, LLC argue the Complaint's allegations are insufficient to state a claim under section 1595(a), asserting four pleading deficiencies. (Doc. #20, pp. 15-27.)

##### (a) "Participation" in a "Venture"

Marriott and Residence Inn, LLC argue that the Complaint lacks well-pled allegations that they participated in a "venture," as required by section 1595(a). (Doc. #20, pp. 20-23.) They maintain that they do not ask the Court to apply the "participation in a venture" definition from section 1591(e)(4), rather they request that the Court simply read the plain language of section 1595(a). Defendants Marriott and Residence Inn, LLC assert that a plain reading of the language of the TVPRA statute requires that the "venture" a civil defendant participates in must be the same "venture" that "has engaged in violation of this chapter." (Id., p. 20.) According to Marriott and Residence Inn, LLC, such language can only mean that for a civil defendant to be found liable, it must participate in a "sex trafficking venture." (Id.) Defendants conclude that Count I of the Complaint should be dismissed because it fails to allege that Marriott or Residence Inn, LLC "participated" in any sex trafficking venture, and it does not demonstrate defendants had any knowledge of the sex trafficking venture or acquiesced to the operation of that venture. (Id., p. 23.)

Here, the Complaint alleges each and every Marriott Hotel Defendant participated in a venture "by engaging in a pattern of acts and omissions that were intended to support, facilitate, harbor, and otherwise further the traffickers' sale and

victimization of the Plaintiff S.Y. for commercial sexual exploitation by repeatedly renting rooms at Residence Inn by Marriott Hotel to people" each and every Marriott Hotel Defendant "knew or should have known were engaged in sex trafficking." (Doc. #1, ¶ 160.) The Complaint also alleges the Marriott Hotel Defendants should have been on notice of the sex trafficking and how it failed to prevent it. (Id. at ¶¶ 4-16, 58-85, 122-24.) The Court finds the allegations in the Complaint sufficient to allege participation in a venture under section 1595(a). See Doe v. Rickey Patel, LLC, 2020 U.S. Dist. LEXIS 195811, 2020 WL 6121939, at *14 (S.D. Fla. Sept. 30, 2020) ("The Court finds it sufficient for Plaintiff to plead that Defendants participated in a venture by renting rooms to individuals that knew or should have known were involved in a sex-trafficking venture, including the sex-trafficking victim."); see also M.A. v. Wyndham Hotels & Resorts, Inc., 425 F. Supp. 3d 959, 971 (S.D. Ohio 2019) ("This Court finds Plaintiff has alleged sufficient facts to show Defendants 'participated in a venture' under § 1595 by alleging that Defendants rented rooms to people it knew or should have known where [sic] engaged in sex trafficking.").

Marriott and Residence Inn, LLC also argue that "participation" in a venture requires an allegation of an overt act in furtherance of the venture, and that failure to prevent sex trafficking is not such an overt act. (Doc. #20, p. 23.) The

Court is not convinced. S.Y., 476 F. Supp. 3d at 1256 ("In the absence of any controlling authority, the Court concludes that actual 'participation in the sex trafficking act itself' is not required to state a claim under section 1595. Accordingly, plaintiffs' failure to allege such actual participation is not fatal to its section 1595 claim under the TVPRA."). Marriott and Residence Inn, LLC have not identified any controlling authority to the contrary.

(b) **Knowingly Benefited From Participating in Venture**

Marriott and Residence Inn, LLC next argue that the Complaint insufficiently alleges that it knowingly benefitted *from* participating in a venture that committed TVPRA crimes, with knowledge of the causal relationship. (Doc. #20, pp. 19-20.) Defendants assert that the allegation that it financially benefited from its relationship with the franchisees because it received royalties is insufficient, since the "collection of rent" by an unrelated hotel franchisor from guests cannot support a reasonable inference that Defendants, as franchisor's, "knowingly" benefited from crimes committed in hotel rooms. (Id., p. 19.)

The Complaint alleges the Marriott Hotel Defendants knowingly benefited from the sex trafficking of plaintiff "by receiving payment for the rooms rented for Plaintiff S.Y. and her traffickers at the Residence Inn by Marriott Hotel," and by receiving "other financial benefits in the form of food and beverage sales and ATM

fees from those persons who were engaging in sex trafficking."
(Doc. #1, ¶ 158.)  As to defendants Marriott and Residence Inn,
LLC as franchisors, the Complaint alleges they "received a
significant franchise fee and continuous royalties on the
Residence Inn by Marriott Hotel's gross revenue," while also
exercising "ongoing and systematic control over operations at the
Residence Inn by Marriott Hotel." (Id. at ¶¶ 46, 113.)  The Court
finds such allegations sufficient to satisfy the "knowingly
benefitted" element.  S.Y., 476 F. Supp. 3d at 1257; Doe S.W. v.
Lorain-Elyria Motel, Inc., 2020 WL 1244192, at *5 (S.D. Ohio Mar.
16, 2020); H.H. v. G6 Hosp., LLC, 2019 WL 6682152, at *2 (S.D.
Ohio Dec. 6, 2019); M.A., 425 F. Supp. 3d at 965.

### (c) Knew or Should Have Known that Venture was Committing Sex Trafficking Crimes

Marriott and Residence Inn, LLC argue the Complaint fails to
plausibly allege that it knew or should have known that the
"venture" was engaging in sex-trafficking crimes, i.e., that
Marriott and Residence Inn, LLC knew or should have known that
plaintiff was caused to engage in commercial sex by force, threats
of force, fraud, or coercion.  (Doc. #20, pp. 16-19.)  Rather,
Defendants argue, the Complaint only alleges that the hotel staff
made promises not to interfere with plaintiff and that some of the
visiting "Johns" were staff, agents and/or employees of the
Marriott Hotel Defendants.  (Id., p. 17.)  Marriott and Residence

Inn, LLC argue that the allegations do not give rise to a reasonable inference that it knew or should have known about any forced commercial sex activity at the Residence Inn. (Id., p. 18.)

The Court disagrees with this argument. First of all, "knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); see Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC, 904 F.3d 1197, 1215 (11th Cir. 2018). Pleading "generally" is not without limits, and a complaint must still comply with "the less rigid—though still operative—strictures of Rule 8." Iqbal, 556 U.S. at 686-87. The Complaint clearly satisfies this notice pleading standard.

Plaintiff has alleged that the following was "routine conduct taking place at the Residence Inn as a result of the human sex trafficking enterprise":

    a. Plaintiff's sex traffickers frequently rented rooms at the hotel close to each other;

    b. Plaintiff's sex traffickers often paid cash for the rooms at the Residence Inn by Marriott Hotel where the Plaintiff engaged in commercial sex acts;

    c. Plaintiff's sex traffickers booked extended stays at the Residence Inn by Marriott Hotel for themselves and for the Plaintiff on a routine basis and on a rotating basis frequently throughout the year;

    d. Plaintiff and her sex traffickers would have few or no luggage or personal possessions for these extended stays;

e. Plaintiff was confined in the rooms at the Residence Inn by Marriott Hotel for long periods of time;

f. Plaintiff's rooms and her sex traffickers' rooms consistently displayed "Do Not Disturb" signs on the doors to the room where the Plaintiff was engaged in commercial sex acts;

g. Men ("Johns") frequently entered and left the rooms at the Residence Inn by Marriott Hotel where the Plaintiff was engaged in illegal commercial sex acts at all times of day and night;

h. The staff and customers at the Residence Inn by Marriott Hotel that was owned, operated, managed, supervised, controlled and/or otherwise held responsible by each and every Marriott Hotel Defendant saw and/or reported to the Residence Inn by Marriott Hotel's respective administration that the rooms where the Plaintiff engaged in commercial sex acts were messy, and contained sex and drug paraphernalia and had an unclean smell;

i. The rooms at the Residence Inn by Marriott Hotel were stained with the Plaintiff's blood after she was beaten or violently raped;

j. Plaintiff's sex traffickers consistently refused housekeeping services and otherwise would prohibit staff from entering their rooms and the Plaintiff's rooms;

k. Plaintiff would frequently request clean towels and linens;

l. Plaintiff dressed in a sexually explicit manner and would walk the hallways of the Residence Inn by Marriott Hotel where she was observed by the hotel staff;

m. Excessively loud noises would consistently come from Plaintiff's rooms;

n. During nighttime hours, Plaintiff and her "Johns" would create noise in the public area of the Residence Inn by Marriott Hotel and, upon information and

belief, would be a disturbance to other guests using the hotel for their intended purposes;

o. The staff members of the Residence Inn by Marriott Hotel would consistently see the Plaintiff wearing inappropriate lounge or sleep type clothing during the day; and

p. While at the hotel, the Plaintiff displayed clear signs of physical abuse, diminished personal hygiene, submissiveness and inappropriate attire.

(Doc. #1, ¶ 97.) Further, the Complaint alleges each and every Marriott Hotel Defendant "knew or should have known about the nature of the sex trafficking venture at the Residence Inn by Marriott Hotel, including as they related to Plaintiff S.Y." due to the following:

a. Requests by the traffickers to rent rooms near exit doors;

b. Cash payments for the rooms by the sex traffickers;

c. Refusal of housekeeping services by those persons engaged in sex trafficking;

d. Excessive used condoms located in the rooms used for sex trafficking;

e. Hotel rooms containing obvious signs of sex trafficking including blood stained towels and linens.

f. Excessive requests for towels and linens in the rooms used for sex trafficking;

g. Hotel staff observing Plaintiff S.Y. and her traffickers in the hotel;

h. Plaintiff S.Y. being escorted by traffickers in and around the hotel;

i. Operation of sex trafficking ventures out of the same hotel room for multiple days or weeks in succession;

j. Multiple men per day coming and going from the same rooms without luggage or personal possessions;

k. Knowledge of police and EMS activity at the Residence Inn by Marriott Hotel and at other locations near the Residence Inn by Marriott Hotel that was related to commercial sex work.

(Id. at ¶ 159.)

The Court finds these allegations sufficient to reasonably infer the defendants knew or should have known of the sex trafficking venture. S.Y., 476 F. Supp. 3d at 1257; A.B., 455 F. Supp. 3d at 193-94; Doe S.W., 2020 WL 1244192, at *5-6; H.H., 2019 WL 6682152, at *3; M.A., 425 F. Supp 3d at 967-68.

### (d) Vicarious Liability

Finally, Marriott and Residence Inn, LLC suggest the TVPRA claim should be dismissed because "there is no language in the TVPRA that allows secondary or vicarious liability in the context of franchisor agency." (Doc. #20, p. 23.) The Court disagrees. See S.Y., 476 F. Supp. 3d at 1257-58 (finding plaintiff made sufficient allegations that franchisor was vicariously liable under section 1595 of the TVPRA to survive dismissal); see also J.C. v. Choice Hotels Int'l, Inc., 2020 WL 6318707, *10 (N.D. Ca. Oct. 28, 2020) (finding plaintiff's vicarious liability claim had "alleged sufficient facts to support a plausible claim that [defendants] received financial benefits from a venture they

vicariously participate in (through their franchisees) that the franchises should have known was engaged in sex trafficking.").

Marriott and Residence Inn, LLC also argue that even if it could be held vicariously liable under the TVPRA, plaintiff's allegations "are not sufficient [to establish an] agency relationship" between Marriott and Residence Inn, LLC and its franchisees, CSM RI and CSM Corp. (Doc. #20, p. 19.) Defendants argue that the Complaint does not plausibly allege that "Marriott had any right to control the particular instrumentality of the harm to plaintiff." (Id., pp. 24-25.) The Court finds that the allegations in the Complaint do create such a plausible inference.

"It is well-established that a franchise relationship does not by itself create an agency relationship between the franchisor and franchisee." Cain v. Shell Oil Co., 994 F. Supp. 2d 1251, 1252 (N.D. Fla. 2014). However, "[f]ranchisors may well enter into an agency relationship with a franchisee if, by contract or action or representation, the franchisor has directly or apparently participated in some substantial way in directing or managing acts of the franchisee, beyond the mere fact of providing contractual franchise support activities." Mobil Oil Corp. v. Bransford, 648 So. 2d 119, 120 (Fla. 1995).

Here, the Complaint alleges Marriott and Residence Inn, LLC were in an agency relationship with CSM RI and CSM Corp. during the relevant time period. (Doc. #1, ¶ 112.) The Complaint

further asserts that in a variety of ways Marriott and Residence Inn, LLC exercised control over the means and methods of how CSM RI and CSM Corp. conducted business, such as by profit sharing, standardized training, standardized rules of operation, regular inspection, and price fixing. (Id. at ¶ 114.) The Court finds such allegations sufficient to support a plausible inference of an agency relationship. See S.Y., 476 F. Supp. 3d at 1258; A.B., 455 F. Supp. 3d at 195-97; Doe S.W., 2020 WL 1244192, at *7; H.H., 2019 WL 6682152, at *6; M.A., 425 F. Supp. 3d at 972.

Because the allegations in the Complaint are sufficient to state a claim under section 1595 of the TVPRA, the Court denies Marriott and Residence Inn, LLC's motion for dismissal pursuant to Rule 12(b)(6).

### 2. Florida RICO Violation

In Count II of the Complaint, Plaintiff asserts a claim against the Marriott Hotel Defendants under Florida's civil RICO statute, section 772.104, Florida Statutes. (Doc. #1, ¶ 162.) To state a claim under the statute, plaintiff must allege plausible facts showing "(1) conduct or participation in an enterprise through (2) a pattern of [criminal] activity." Horace-Manasse v. Wells Fargo Bank, N.A., 521 F. App'x 782, 784 (11th Cir. 2013) (quoting Lugo v. State, 845 So. 2d 74, 97 (Fla. 2003)).[3]

---

[3] "Since Florida RICO is patterned after federal RICO, Florida courts have looked to the federal courts for guidance in

Each of the motions argue plaintiff has insufficiently pled the enterprise element of her claim. (Doc. #19, p. 6; Doc. #20, pp. 27-28.) Florida's RICO statute defines enterprise to include a "group of individuals associated in fact although not a legal entity." § 772.102(3), Fla. Stat. "[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose." <u>Boyle v. United States</u>, 556 U.S. 938, 948 (2009). To sufficiently plead such an enterprise, "a plaintiff <u>must</u> allege that a group of persons shares three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." <u>Cisneros v. Petland, Inc.</u>, 972 F.3d 1204, 1211 (11th Cir. 2020) (marks and citations omitted). The motions argue the Complaint fails to sufficiently allege a "common purpose" among the defendants. (Doc. #19, p. 7; Doc. #20, pp. 27-28.)

"The purpose prong contemplates 'a common purpose of engaging in a course of conduct' among the enterprise's alleged participants." <u>Cisneros</u>, 972 F.3d at 1211 (quoting <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981)). "An abstract common

---

interpreting and applying the act. Therefore, federal decisions should be accorded great weight." <u>O'Malley v. St. Thomas Univ., Inc.</u>, 599 So. 2d 999, 1000 (Fla. 3d DCA 1992); <u>see also</u> <u>Cont'l 332 Fund, LLC v. Albertelli</u>, 317 F. Supp. 3d 1124, 1137 (M.D. Fla. 2018) ("[T]he Eleventh Circuit applies federal RICO analysis equally to Florida RICO claims.").

purpose, such as a generally shared interest in making money, will not suffice.  Rather, where the participants' ultimate purpose is to make money for themselves, a RICO plaintiff must plausibly allege that the participants shared the purpose of enriching themselves through a particular criminal course of conduct."  Id. (citations omitted).

Here, the Complaint alleges the Marriott Hotel Defendants "associated with each other and/or the Plaintiff S.Y.'s sex traffickers for the common purpose of profiting off an established sex trafficking scheme."  (Doc. #1, ¶ 167.)  Plaintiff asserts this "association-in-fact" constitutes an "enterprise" under Florida's RICO statute, and that the defendants conducted or participated in their enterprises through a pattern of criminal activity, "related by their common purpose to profit off an institutionalized sex trafficking scheme."  (Id. at ¶¶ 167-68.) The Court finds these allegations sufficient to allege the defendants "shared the purpose of enriching themselves through a particular criminal course of conduct."  Cisneros, 972 F.3d at 1211; see also United States v. Church, 955 F.2d 688, 697-98 (11th Cir. 1992) (noting that "an association's devotion to 'making money from repeated criminal activity' . . . demonstrates an enterprise's 'common purpose of engaging in a course of conduct'" (citations omitted)); Burgese v. Starwood Hotel & Resorts Worldwide, Inc., 101 F. Supp. 3d 414, 424 (D. N.J. 2015) (on motion to dismiss

Florida RICO claim, court found that "Plaintiff's Amended Complaint can be read to allege a 'common purpose' of furthering an institutionalized prostitution scheme to increase profits for the participants," and that "[t]hese allegations, though thin, are sufficient for purposes of this motion.").

Each of the motions also argue the Complaint fails to sufficiently plead the "pattern of criminal activity" element. (Doc. #19, p. 8; Doc. #20, p. 28.) As previously stated, "[i]n order to state a civil cause of action under the Florida RICO Act, a plaintiff must allege a pattern of criminal activity." Arthur v. JP Morgan Chase Bank, NA, 569 F. App'x 669, 682 (11th Cir. 2014) (citing §§ 772.103-104, Fla. Stat.). The statute's definition of "criminal activity" provides "that a particular state law crime can serve as the predicate act for a RICO claim if it is 'chargeable by indictment or information' and falls within a series of specified provisions." Id. (citing § 772.102(1)(a), Fla. Stat.). "In order to establish a pattern of criminal activity, the plaintiff must allege two or more criminal acts 'that have the same or similar intents, results, accomplices, victims, or methods of commission' that occurred within a five-year time span." Id. at 680 (citing § 772.102(4), Fla. Stat.).

Plaintiff's Florida RICO claim is predicated on the commission of human trafficking crimes in violation of section 787.06, Florida Statutes. (Doc. #1, ¶¶ 169, 171); see also §

772.102(1)(a)15., Fla. Stat. (listing "human trafficking" under Chapter 787 among the types of "criminal activity" covered by the Florida RICO statute). This provision provides various punishments for "[a]ny person who knowingly, or in reckless disregard of the facts, engages in human trafficking, or attempts to engage in human trafficking, or benefits financially by receiving anything of value from participation in a venture that has subjected a person to human trafficking." § 787.06(3), Fla. Stat. Given the similarity between this language and the TVPRA's civil liability provision, the Court rejects defendants' arguments as to the Florida RICO claim.

The Marriott Hotel Defendants argue the RICO claim fails to allege a pattern of criminal activity because the Complaint "impermissibly groups" the defendants together, and therefore "[i]t is impossible to discern if CSM, or really any Defendant . . . committed two or more predicate acts[.]" (Doc. #19, pp. 8-9; Doc. #20, pp. 27-28.) The Court disagrees. The Complaint alleges plaintiff was trafficked on a "regular, consistent and/or repeated basis" at various hotels in Naples, Florida, and at the Residence Inn from approximately 2014 to February 2016. (Doc. #1, ¶ 86.) The Complaint describes how the sex trafficking occurred at the Residence Inn and the "routine conduct" taking place as a result, as well as alleges Marriott Hotel Defendants' agents and employees made promises to the traffickers not to interfere with the

trafficking and knowingly turned a blind eye to it. (Id. at ¶¶ 90, 97, 246, 248.) Viewing the allegations in the light most favorable to plaintiff, the Court finds this sufficient to allege two or more predicate acts within the applicable timeframe.

Finally, the Marriott Hotel Defendants argue the Complaint contains insufficient allegations regarding causation. (Doc. #19, pp. 9-10; Doc. #20, pp. 28-29.) Under the Florida RICO statute, a plaintiff must demonstrate that their injuries were proximately caused by the RICO violations. See Bortell v. White Mountains Ins. Grp., Ltd., 2 So. 3d 1041, 1047 (Fla. 4th DCA 2009). "A wrongful act is a proximate cause if it is a substantive factor in the sequence of responsible causation." Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1307 (11th Cir. 2003) (marks and citation omitted). Furthermore, a plaintiff "must show a 'direct relation between the injury asserted and the injurious conduct alleged.'" Id. (quoting Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258, 268 (1992)). "Indirect harm is insufficient to sustain a cause of action under the RICO statutes." Bortell, 2 So. 3d at 1047; see also O'Malley, 599 So. 2d at 1000 ("[I]ndirect injuries, that is, injuries sustained not as a direct result of predicate acts . . . will not allow recovery under Florida RICO.").

The Marriott Hotel Defendants argue that the Complaint contains no plausible allegations that it engaged in any conduct that was the proximate cause of plaintiff's alleged injuries.

(Doc. #19, pp. 9-10; Doc. #20, pp. 28-29.) Plaintiff responds that she has sufficiently pled proximate cause and consequential damages by alleging she "was at the Residence Inn as part of the sexual trafficking scheme and her injuries were caused by and in furtherance of the sexual trafficking scheme." (Doc. #33, p. 13.) Having reviewed the allegations in the Complaint, the Court agrees with plaintiff.[4]

The Complaint alleges each of defendants "was on notice of repeated incidents of sex trafficking occurring on their hotel premises," and yet "failed to take the necessary actions to prevent sex trafficking from taking place." (Doc. #1, ¶ 62.) The Complaint also alleges numerous ways in which these defendants could have identified and prevented the sex trafficking from occurring. (Id. at ¶¶ 65-78.) Finally, the Complaint alleges the "acts and omissions of the Marriott Hotel Defendants served to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization" of plaintiff "for commercial sexual

---

[4] Unlike the federal RICO statute, "the Florida statute does not expressly limit recovery . . . to persons who have suffered injury to their 'business or property,' language which has been interpreted to exclude economic losses arising out of personal injuries." Berber v. Wells Fargo Bank, N.A., 2018 WL 10436236, *3 (S.D. Fla. May 24, 2018); see also Townsend v. City of Miami, 2007 WL 9710944, *2 (S.D. Fla. Nov. 7, 2007) ("Unlike its federal counterpart, the Florida RICO statute is not limited to 'business or property' injuries. . . . The plain language of the Florida statute does not exclude pecuniary losses resulting from personal injury. Accordingly, Mr. Townsend can sue under the Florida RICO statute for his loss of employment and personal injuries.").

exploitation by repeatedly renting rooms to people they knew or should have known were engaged in sex trafficking." (Id. at ¶ 127.) "[B]y knowingly, or with reckless disregard, repeatedly allowing sex trafficking to occur on their premises between 2014 and 2016," the defendants' "acts have yielded consistent results and caused economic, physical, and psychological injuries" to plaintiff. (Id. at ¶¶ 170, 173.)

The Court finds these allegations sufficient to plead a "direct relation between the injury asserted and the injurious conduct alleged," Holmes, 503 U.S. at 268, and therefore the Complaint adequately pleads proximate cause. See Burgese, 101 F. Supp. 3d at 422 (finding allegations of physical injury and mental anguish "cognizable under the Florida RICO Act" and sufficient to survive a motion to dismiss); cf. Berber, 2018 WL 10436236, at *5 ("Because Plaintiffs' asserted injuries arise from a set of actions entirely distinct form [sic] the alleged predicate RICO violations, proximate cause is lacking as a matter of law.").

### 3. Premise Liability

Count III of the Complaint asserts a claim of premise liability against each defendant (Doc. #1, ¶ 179), which is a form of negligence action. "The elements for negligence are duty, breach, harm, and proximate cause; the additional elements for a claim of premises liability include the defendant's possession or control of the premises and notice of the dangerous condition."

<u>Lisanti v. City of Port Richey</u>, 787 So. 2d 36, 37 (Fla. 2d DCA 2001). Plaintiff alleges the Marriott Hotel Defendants owed her a variety of duties, that they breached these duties, and that as a direct and proximate result, she suffered bodily injury. (Doc. #1, ¶¶ 185-99.) Plaintiff also alleges the defendants had actual or constructive knowledge of sex trafficking occurring on the premises, that they knew or should have known the risk of such criminal conduct taking place would be unreasonably high without appropriate precautions, and that they had actual or constructive knowledge of Plaintiff being in dangerous conditions. (<u>Id.</u> at ¶¶ 191-92.)

### (a) Statute of Limitations

Defendants CSM RI and CSM Corp. argue the premise liability claim should be dismissed because it is barred by the relevant statute of limitations. (Doc. #19, p. 13.) Under Florida law, the statute of limitations for negligence claims is four years. § 95.11(3)(a), Fla. Stat.

A statute of limitations bar is "an affirmative defense, and . . . plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint." <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004) (citation omitted). "A dismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." <u>United States ex rel.</u>

Hunt v. Cochise Consultancy, Inc., 887 F.3d 1081, 1085 (11th Cir. 2018) (marks and citation omitted).

Plaintiff alleges the sex trafficking occurred at the Residence Inn "[f]rom approximately 2014 to February 2016." (Doc. #1, ¶¶ 13, 218, 236.) Defendants CSM RI and CSM Corp. argue that the premise liability claim is barred because plaintiff did not bring her claims against them until April 2020. (Doc. #19, p. 13-14.) Theses two defendants were not named in the December 2019 First Amended Complaint to which a severance was granted.

Instead of responding directly to the argument, plaintiff requests the Court permit discovery to occur rather than dismiss the claims. (Doc. #33, pp. 19-20.) Plaintiff suggests the claims may relate back to the December 31, 2019 First Amended Complaint, the date she first identified the Residence Inn and named Marriott, CSM RI and CSM Corp.'s franchisor, as a defendant. (Doc. #33, p. 19.) For example, plaintiff argues that CSM RI and CSM Corp. may have been notified by Marriott when the suit was originally filed pursuant to the terms of the franchisor/franchisee agreements. (Doc. #33, p. 20); see Brown v. VCNA Prestige Concrete Prods., Inc., 2014 WL 1293266, at *2 (M.D. Fla. Mar. 31, 2014) (stating that to find a complaint relates back under the Federal Rules of Civil Procedure when a plaintiff adds a formerly unnamed defendant, "the proper party must have received notice of the action such that it will not be prejudiced.").

As noted, plaintiff is not required to negate an affirmative defense in her complaint. La Grasta, 358 F.3d at 845. It is not apparent from the face of the Complaint that the claim is time-barred because the Court cannot determine that plaintiff's premise liability claim does not relate back to the First Amended Complaint or is not subject to statutory or equitable tolling.[5] Therefore, the motion to dismiss is denied at this stage of the proceedings. Plaintiff's request for discovery is moot since discovery will be available in due course.

To the extent CSM RI and CSM Corp. seek dismissal of the other negligent claims on the same grounds (Doc. #19, pp. 13-14), the Court's ruling applies to those claims as well.

### (b) Failure to State a Claim

The Marriott Hotel Defendants argue the premise liability claim is insufficiently pled because it fails to allege (1) that they possessed or controlled the Residence Inn, (2) that they knew or should have known of a dangerous condition and failed to respond to it, or (3) that any dangerous condition caused or contributed to plaintiff's injuries. (Doc. #19, p. 10; Doc. #20, p. 29.) The

---

[5] "The doctrine of equitable tolling was developed to permit under certain circumstances the filing of a lawsuit that otherwise would be barred by a limitations period." Machules v. Dep't of Admin., 523 So. 2d 1132, 1133 (Fla. 1988); see also Fed. Deposit Ins. Corp. v. Nationwide Equities Corp., 304 So. 3d 1240, 1243-44 (Fla. 3d DCA 2020); § 95.051, Fla. Stat.

Court finds that the Complaint sufficiently alleges all three elements.

As noted, a premise liability claim requires a defendant to possess or control the premises at issue. Lisanti, 787 So. 2d at 37. Here, plaintiff alleges the Marriott Hotel Defendants were the "owners, operators, managers, supervisors, controllers and innkeepers" of the Residence Inn, and that Marriott and Residence Inn LLC exercised control over the means and methods of how its franchisees conducted business at the hotel. (Doc. #1, ¶¶ 31, 114.) While the Marriott Hotel Defendants may dispute these allegations, the Court must accept them as true at this stage of the proceedings and finds them sufficient to allege the Marriott Hotel Defendants had sufficient control of the Residence Inn for premise liability purposes.

The Marriott Hotel Defendants also suggest plaintiff's claim fails because it insufficiently alleges they knew or should have known either of a dangerous condition at the Residence Inn and failed to respond to it. (Doc. #19. p. 10; Doc. #20, p. 29.) Such knowledge must only be pled generally, Fed. R. Civ. P. 9(b), and the allegations in the Complaint are sufficient to satisfy the notice pleading requirements.

"Under Florida law, a business owes invitees a duty to use due care to maintain its premises in a reasonably safe condition. This includes the duty to protect customers from criminal attacks

that are reasonably foreseeable." Banosmoreno v. Walgreen Co., 299 F. App'x 912, 913 (11th Cir. 2008) (citations omitted).

> Foreseeability can be shown by two alternative means. First, a plaintiff may demonstrate that a proprietor knew or should have known of a dangerous condition on his premises that was likely to cause harm to a patron. Second, a plaintiff can show that a proprietor knew or should have known of the dangerous propensities of a particular patron.

Id. (marks, citations, and footnote omitted).

A franchisor such as Marriott and Residence Inn, LLC may enter into an agency relationship with a franchisee under certain circumstances. Mobil Oil Corp., 648 So. 2d at 120. The Complaint contains sufficient allegations to support a claim of an agency relationship between Marriott and Residence Inn, LLC and its franchisees, and any factual challenge to such a relationship is premature. Cain, 994 F. Supp. 2d at 1253. Furthermore, the Complaint contains sufficient allegations that sex trafficking was occurring at the Residence Inn and that each and every Marriott Hotel Defendant knew or should have known of it. (Doc. #1, ¶¶ 16, 59-63, 98, 103-07, 123, 159, 223, 228.) The Complaint also alleges that as a result of the Marriott Hotel Defendants' failure to make the hotel premises safe, plaintiff suffered various injuries and damages. (Doc. #1, ¶¶ 136, 146, 150, 199.) Accordingly, the Court denies Marriott Hotel Defendants' request to dismiss the claim as insufficiently pled.

## 4. Negligent Hiring, Supervision, and Retention

Count IV of the Complaint asserts a claim of negligent hiring, supervision, and retention against each Marriott Hotel Defendant. (Doc. #1, ¶ 200.) "To state a claim under Florida law for negligent hiring, supervision and/or retention, a plaintiff must establish that the employer owed a legal duty to the plaintiff to exercise reasonable care in hiring and retaining safe and competent employees." Clary v. Armor Corr. Health Servs., No. 6:13-cv-90-Orl-31KRS, 2014 U.S. Dist. LEXIS 15633, at *11 (M.D. Fla. Feb. 7, 2014) (citations omitted). "Florida law also holds employers liable for reasonably foreseeable damages resulting from the negligent training of its employees and agents." Id. (citing Lewis v. City of St. Petersburg, 260 F.3d 1260, 1265 (11th Cir. 2001)). "For an employer to owe a plaintiff a duty, the plaintiff must be in the zone of risk that was reasonably foreseeable to the employer." Id. (citation omitted).

> Accordingly, to state a claim, the plaintiff must allege facts that would establish a nexus between the plaintiff and the tortfeasor's employment from which a legal duty would flow from the defendant-employer to the plaintiff. The plaintiff must then establish that the defendant-employer breached that duty and that the breach caused him damage.

Id. (citations omitted).

The Complaint alleges each Marriott Hotel Defendant was in control of the hiring, instructing, training, supervising, and terminating of the hotel employees, and that each defendant had a

duty to make an appropriate investigation of the employees. (Doc. #1, ¶¶ 208-10.) The Complaint further alleges that the defendants knew or should have known that hotel employees were "allowing criminals to rent rooms for prostitution and drug dealing," "failing to either identify and/or report the human sex trafficking and foreseeable harm" of plaintiff, and "failing to refuse continued lodging services to human sex traffickers." (Id. ¶¶ 206, 211-13.) The Complaint concludes that the defendants were negligent in their hiring, employment, supervision, and termination decisions regarding the employees, and that the sex trafficking of plaintiff was a foreseeable and direct result. (Id. ¶¶ 214-18.)

Each of the motions seeks dismissal of the negligent hiring, supervision, and retention claim based on pleading deficiencies. The Marriott Hotel Defendants argue that the claim fails because the Complaint lacks sufficient factual allegations that any defendant knew or should have known of any unfit employees. (Doc. #19, pp. 10-11; Doc. #20, p. 30); see also Bright v. City of Tampa, 2017 WL 5248450, *8 (M.D. Fla. May 17, 2017) ("When an employer fails to take a corrective action against an employee because the employer had no notice of problems with the employee's fitness, the employer is not liable under Florida law for negligent supervision or retention."). The Court disagrees. The Complaint sufficiently alleges facts suggesting sex trafficking was

occurring at the hotel, that the employees knew of it and failed to prevent it, and that due to their control over the employees, each defendant knew or should have known of it. (Doc. #1, ¶¶ 84, 86-98, 103-06, 116, 130, 206-07.) The Court finds such allegations sufficient at this stage of the proceedings.

Marriott and Residence Inn, LLC also argue the claim should be dismissed because the Complaint does not explain the relationship between Marriott and Residence Inn, LLC and the employees of the Residence Inn, which is required to establish how or in what way they were responsible for hiring and supervising the Residence Inn's employees. (Doc. #20, pp. 30-31.) The Court is not persuaded, as it has determined the Complaint's allegations of an agency relationship between Marriott and Residence Inn, LLC and CSM RI and CSM Corp. are sufficient. Accordingly, the Court denies the request to dismiss the negligent hiring, supervision, and retention claim.

### 5. Negligent Rescue

Plaintiff also asserts a claim for negligent rescue in Count V of the Complaint against CSM RI and CSM Corp. (Doc. #1, ¶ 219.) The Complaint alleges CSM RI and CSM Corp., as the owner and operator of the Residence Inn, had a duty to keep the premises safe and prevent foreseeable criminal activity, as well as a duty "to make safe a dangerous condition at the Residence Inn by Marriott Hotel and to rescue their [sic] hotel guests, specifically

Plaintiff S.Y., from the peril they [sic] created." (Id. ¶¶ 222, 225, 231.) The Complaint alleges that by various acts and omissions, CSM RI and CSM Corp. breached these duties and that the continuous sex trafficking of plaintiff was the direct and foreseeable result. (Id. at ¶¶ 227-29, 233-34, 236.) CSM RI and CSM Corp. argue the negligent rescue claim should be dismissed because it is insufficiently pled. (Doc. #19, pp. 11-12.)

There is no common law duty to rescue a stranger. Estate of Ferguson v. Mascara, 2010 WL 11558195, at *2 (S.D. Fla. Sept. 7, 2010) (citing Bradberry v. Pinellas Cty., 789 F.2d 1513, 1516 (11th Cir. 1986)). "A well-established exception to this rule, however, provides that an innkeeper is 'under an ordinary duty of care to [a guest] after he knows or has reason to know the [guest] is ill or injured.'" De La Flor v. Ritz-Carlton Hotel Co., L.L.C, 2013 WL 148401, *3 (S.D. Fla. Jan. 14, 2013) (quoting L.A. Fitness, Int'l, LLC v. Mayer, 980 So. 2d 550, 557 (Fla. 4th DCA 2008)); see also Abramson v. Ritz Carlton Hotel Co., LLC, 480 F. App'x 158, 161 (3d Cir. 2012) ("Generally, there is no duty to affirmatively assist an injured person unless a special relationship, such as that between an innkeeper and its guests, exists between the parties.") (citation omitted).

CSM RI and CSM Corp. argue the negligent rescue claim should be dismissed because it is insufficiently pled under the "rescue doctrine." (Doc. #19, p. 11.) Under Florida law, the rescue

doctrine holds a tortfeasor liable for injuries to a third party who is hurt in attempting to rescue the direct victim of the tortfeasor. <u>Zivojinovich v. Barner</u>, 525 F.3d 1059, 1070 (11th Cir. 2008) (citation omitted). "The basic precept of this doctrine 'is that the person who has created a situation of peril for another will be held in law to have caused peril not only to the victim, but also to his rescuer, and thereby to have caused any injury suffered by the rescuer in the rescue attempt.'" <u>Menendez v. W. Gables Rehab. Hosp., LLC</u>, 123 So. 3d 1178, 1181 (Fla. 3d DCA 2013) (quoting <u>N.H. Ins. Co. v. Oliver</u>, 730 So. 2d 700, 702 (Fla. 4th DCA 1999)).

As plaintiff correctly argues in response (Doc. #33, pp. 16-17), the rescue doctrine is not implicated by plaintiff's negligent rescue claim. <u>See</u> <u>Krajcsik v. Ramsey</u>, 2017 WL 3868560, *2 n.4 (D. Md. Sept. 5, 2017) ("The rescue doctrine is related to, but separate from, the affirmative duty to rescue an imperiled party that the courts impose on persons in some situations."). Accordingly, because the rescue doctrine is not applicable, CSM RI and CSM Corp.'s request for dismissal based on the doctrine is denied.

### 6. Aiding and Abetting, Harboring, Confining, Coercion and Criminal Enterprise

Finally, Count VI of the Complaint asserts a claim of aiding and abetting against CSM RI and CSM Corp. (Doc. #1, ¶¶ 237.)

Plaintiff accuses defendants of "aiding and abetting unlawful activity including unlawful confinement, imprisonment, assault and battery by [plaintiff's] sex traffickers and 'Johns.'" (<u>Id.</u>) CSM RI and CSM Corp. argue the claim must be dismissed because (1) it asserts they "aided and abetted the criminal act of sex trafficking in violation of the TVPRA," and (2) the TVPRA does not provide a cause of action for aiding and abetting. (Doc. #19, p. 12.) Having reviewed the allegations in the Complaint and the relevant case law, the Court finds CSM RI and CSM Corp. are misinterpreting the claim.

Florida courts have recognized aiding and abetting the commission of a tort as a standalone claim. <u>See</u> <u>Gilison v. Flagler Bank</u>, 303 So. 3d 999, 1002 (Fla. 4th DCA 2020) (aiding and abetting fraud); <u>MP, LLC v. Sterling Holding, LLC</u>, 231 So. 3d 517, 527 (Fla. 3d DCA 2017) (aiding and abetting breach of fiduciary duty). This Court has previously listed the following elements that must be alleged "to state a claim for aiding and abetting a common law tort" under Florida law: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter [sic]; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." <u>Angell v. Allergan Sales, LLC</u>, 2019 U.S. Dist. LEXIS 142768, 2019 WL 3958262, at *8 (M.D. Fla. Aug. 22, 2019); <u>see also</u> <u>Lawrence v. Bank of Am., N.A.</u>, 455 F. App'x 904,

906 (11th Cir. 2012) (applying the above elements to three Florida tort claims). These cases demonstrate Florida recognizes a common-law claim of aiding and abetting tortious conduct.

Here, the Complaint alleges CSM RI and CSM Corp. aided and abetted plaintiff's unlawful harboring, confinement, imprisonment, assault and battery (Doc. #1, ¶¶ 237, 241, 243-248) and to the extent the claim alleges CSM RI and CSM Corp. have actual knowledge,[6] the Court finds it sufficient to state a claim. Accordingly, the Court denies CSM RI and CSM Corp.'s request for dismissal.

### C. More Definite Statement

Finally, CSM RI and CSM Corp. assert that the Complaint fails to provide them with any specificity as to the dates plaintiff visited the Residence Inn, other than stating she was trafficked there from 2014 through February 2016. (Doc. #19, p. 14.) To the extent CSM RI and CSM Corp. are requesting the Court exercise its discretion and order plaintiff provide a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, the Court denies this request.

Pursuant to Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a

---

[6] "[A]llegations which demonstrate merely constructive knowledge, recklessness or gross negligence cannot satisfy the 'knowledge' element of an aiding and abetting claim under Florida law." Angell, 2019 WL 3958262, *9.

responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); see also Euro RSCG Direct Response, LLC v. Green Bullion Fin. Servs., 872 F. Supp. 2d 1353, 1358 (S.D. Fla. 2012) (quoting Ramirez v. FBI, No. 8:10-cv-1819-T-23TBM, 2010 U.S. Dist. LEXIS 132271, 2010 WL 5162024, at *2 (M.D. Fla. Dec. 14, 2010)) ("A Rule 12(e) motion is appropriate if the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself].").

The Court finds the Complaint is not "so vague or ambiguous" that Defendant could not reasonably respond. Euro RSCG Direct Response, 872 F. Supp. 2d at 1358 ("[A Rule 12(e)] motion is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail."); Eye Care Int'l, Inc. v. Underhill, 92 F. Supp. 2d 1310, 1316 (M.D. Fla. 2000) (noting that "motions for a more definite statement are not favored in light of the liberal discovery practice," and that "a motion for more definite statement is not to be used as a substitute for discovery"); cf. LeBlanc v. LVNV Funding, LLC, No. 2:19-cv-285-FtM-99MRM, 2019 U.S. Dist. LEXIS 99983, at *1 (M.D. Fla. June 14, 2019) (granting motion for more definite statement, finding "the Complaint contains no facts" and was "not sufficiently specific to place defendant on notice of the claims against it").

Here, Plaintiff has provided specific facts about the elements of each cause of action, Defendant's purported knowledge and participation in ongoing and continuous sex trafficking at the Residence Inn in Naples, Florida, that occurred from 2014 through February 2016 with respect to Plaintiff, and its failure to prevent this criminal conduct, which ultimately resulted in CSM RI and CSM Corp. profiting from the trafficking. The Court finds such allegations are sufficiently specific to place Defendant on notice of the claims against it, and as such, Defendant's Motion for a More Definite Statement is denied.

Accordingly, it is hereby

**ORDERED:**

1. Defendants CSM RI Naples LLC and CSM Corporation's Motion to Dismiss (Doc. #19) is **DENIED.**

2. Defendants Marriott International, Inc. and Residence Inn By Marriott LLC's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. #20) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this __19th__ day of May, 2021.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record